## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

IN RE:                                          )          CASE NO. 17-56316 - jwc
Julian Syneer Arnold,                           )          CHAPTER 13
Stacey Enita Arnold,                            )
    Debtors.                    )
_____)_____

                                   )
Taariq Heaven                                   )
    Plaintiff,                   )          ADVERSARY PROCEEDING
                                   )          CASE NO. _____
vs.                                             )
Julian Syneer Arnold,                           )
    Defendant.                   )

### COMPLAINT TO DETERMINE DEBT NONDISCHARGEABLE
### AND TO OBJECT TO DEBTOR'S DISCHARGE

COMES NOW Taariq Heaven ("Plaintiff") by and through Counsel, and files this

"COMPLAINT TO DETERMINE DEBT NONDISCHARGEABLE AND TO OBJECT TO

DEBTOR'S DISCHARGE" against Julian Syneer Arnold ("Debtor/Defendant"). In support,

Plaintiff offers the following:

### JURISDICTION AND VENUE

1. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (I), (J) and (O),

seeking a determination under 11 U.S.C. § 523 for a determination that the indebtedness owed to

Plaintiff is excepted from discharge. This Court has jurisdiction over this adversary proceeding

pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue is proper by virtue of 28 U.S.C. § 1409(a) as this proceeding arises in and

relates to Debtors' bankruptcy, case number 17-56316-jwc, pending in this district.

## PARTIES

3.  Plaintiff is an individual.

4.  Defendant is an individual residing in Georgia.

5.  Defendant owns and operates JSA Construction, Inc. ("JSA").

## FACTUAL ALLEGATIONS

6.  The instant chapter 13 case was initiated by Debtor filing a voluntary petition on April 4, 2017, jointly with his spouse Stacey Enita Arnold, who is not a named party in the instant adversary and as such is not further referred to in any reference to Debtor or Defendant.  Debtors' 341 Meeting of Creditors was held and concluded on May 8, 2017, and the plan and case was confirmed on August 1, 2017.

7.  Plaintiff has an outstanding claim against Debtor in the form of unperformed contractor and construction work of property located at 170 South Ave. SE, Atlanta, GA 30315 ("the property").

8.  On October 31, 2016, Plaintiff and Debtor entered a contract for home repairs ("Contract") to be performed by Defendant to begin on January 2, 2017, and to be completed by February 27, 2017.  See Exhibit A.

9.  The Contract, among other clauses, represents in Article 7, that Defendant is "duly licensed to perform the Work as required by local laws and regulations."  See Exhibit A.

10.  Plaintiff made payments to Defendant on various dates between January 3, 2017 and October 2, 2017.  The total amounts paid to Defendant total $41,615.94, which includes approximately $22,900.00 in personal checks from Plaintiff and $18,715.94 in "bank draws," which were paid directly to Debtor by Freedom Mortgage Bank.  See Exhibit B.

11.  The bank draws account for loans that Plaintiff took out as home improvement loans which were paid directly to Defendant.  In the application for any liens, Defendant held out that he was a licensed contractor, when in fact he is unlicensed.  His license number of 07401286 is the control number assigned him by the Secretary of State of Georgia, and not a contractor's license number.  See Exhibit C.  In fact, Plaintiff has been unable to unearth any evidence that Defendant is a duly licensed contractor as stated in his contract.  See Exhibit D for Professional Licensing search results from the Georgia Secretary of State for "JSA Construction, Inc.", which returns no results matching Defendant's business.

12.  After several months of delays and incompletion, Plaintiff has been forced to expend money for storage, utilities, personal rent and early termination lease fees for the residence he expected to vacate upon completion of the project, as well as lost income from tenants as planned.  Due to the delays and incompletion, Plaintiff has suffered no less than an additional $24,361.83 in losses, costs and expenses.

13. Plaintiff has a potential claim of $66,361.83 against Plaintiff.

**COUNT I: FRAUD EXCPETED FROM DISCHARGE UNDER 11 U.S.C. § 523(a)(3)**

14.  Plaintiff incorporates by reference paragraphs 1 through 13.

15.  Debtor presented documents including schedules D, E, and F, as well as a Statement of Financial Affairs to this honorable Court which omitted any reference to Plaintiff's potential claims.

16.  Due to Debtor's omission of Plaintiff, Plaintiff received no notice whatsoever about the instant case, and as such had no ability to file a claim or determination of discharge ability of

the claims and debts.  Debtor only found out about Defendant's bankruptcy case in approximately March, 2018.

17.  Plaintiff has been damaged by the omission and failure to list or schedule Plaintiff in order to permit him to protect his claim.

18.  The claim deadline in this case expired on August 7, 2017, and the deadline for a determination of dischargeability passed on July 7, 2017.  Both of these dates predates Plaintiff's knowledge of the Bankruptcy.

19.  The indebtedness owing to Plaintiff is non dischargeable pursuant to 11 U.S.C. § 523(a)(3).

## COUNT II:  FRAUD EXCPETED FROM DISCHARGE UNDER

### U.S.C. § 523(a)(2)(4)&(6)

20.  Debtor incorporates by reference paragraphs 1 through 19.

21.  Debtor presented written statements holding himself out as a licensed contractor.

22.  Debtor's presentation of the false documents induced Plaintiff to justifiably hire and make payments to Debtor.

23.  The indebtedness owing to Plaintiff is non dischargeable pursuant to 11 U.S.C. § 523(a)(2)(4)&(6).

24.  However, due to Defendant's failure to list or schedule Plaintiff in his Bankruptcy case, Plaintiff has no ability to file a claim or bring an action for determination of the dischargeability under 11 U.S.C. § 523(a)(2)(4)&(6).

25.  As such, Plaintiff's claims against Defendant Debtor should be determined to be non-dischargeable, allowing Plaintiff the ability to exercise all legal options he retains.

WHEREFORE, Plaintiff respectfully prays:

a)      The indebtedness owed to Plaintiff is excepted from discharge pursuant to 11

U.S.C. § 523(a)(3);

b)      That this Court require Defendant to pay all actual damages, including attorney's

fees, costs, and expenses incurred by Plaintiff in bringing this action;

c)      That this Court grant such further relief as it deems just and proper.


This 12th day of April, 2018


                                        Respectfully submitted,
                                        BROOKHUIS LAW LLC

                                        /S/
                                        John Brookhuis
                                        Attorney for Debtor
                                        Georgia Bar No. 940484
                                        PO Box 17919
                                        Atlanta, GA 30316
                                        (678) 390-8070
                                        john@brookhuislaw.com

# EXHIBIT

## A

## Construction Contract

Case Number: 2016090256006

Date: 10/31/16

Borrower Name(s): Tariq Heaven

Phone #: 404-924-4887

Phone #:

**THIS IS A MODEL DOCUMENT FOR USE IN RENOVATION OR CONSTRUCTION LOAN TRANSACTIONS. THIS FORM IS PROVIDED AS AN EXAMPLE AND IS NOT VALID AND ENFORCEABLE IN ALL JURISDICTIONS. LENDERS SHOULD CONSULT WITH LEGAL COUNSEL TO ENSURE THAT ALL FORMS USED TO ORIGINATE RENOVATION OR CONSTRUCTION MORTGAGES ARE APPROPRIATE, AND THAT ALL LEGAL INSTRUMENTS ARE COMPLETED CORRECTLY AND IN COMPLIANCE WITH APPLICABLE LAW.**

THIS CONSTRUCTION CONTRACT ("Contract") dated as of Oct 31 , 2016 by and between Tariq Heaven ("Owner") and Julian Arnold ("Contractor").

Owner and Contractor, in consideration of the mutual covenants hereinafter set forth, agree as follows:

**Article 1. Work.**

Contractor shall construct the items identified in Exhibit "A" ("Work") in accordance with the Contract Documents, as identified in Article 8 of this Contract on property which is located at 170 South Ave Atlanta, GA 80315 ("Property").

**Article 2. Contract Time.**

The Work will be completed on or before 2/27/17 ("Completion Date"), subject to modifications in approved Change Orders. The Completion Date shall be the date when the Work is sufficiently complete in accordance with the Contract Documents so that Owner can occupy or utilize the Property for its intended use ("Substantial Completion"). If Owner will pay Contractor for all or part of the Work with funds advanced by a lender, Substantial Completion shall be the date as defined by the loan documents. Before starting the Work, Contractor shall submit to Owner for review an estimated progress schedule indicating the starting and completion dates of various stages of the Work.

**Article 3. Contract Price.**

Owner shall pay to Contractor an amount equal to $ 29,943.89 ("Contract Price") for completion of the Work.

MULTISTATE CONSTRUCTION CONTRACT – Single Family – Fannie Mae HOMESTYLE MODEL DOCUMENT        Form 3734    11/01
(page 1 of 7 pages)

**Article 4. Change Orders.**

Any increase or decrease in the Contract Price, change in the Work or change in the Contract Time must be set forth in a change order signed by Owner and Contractor and approved by the Lender ("Change Order").

**Article 5. Payment Procedures**

5.1.    Progress Payments. Contractor shall submit to Owner a request for payment in a form agreed to by Owner and Contractor and approved by Lender ("Request for Advance") which shall cover a period of at least __10 Days__ calendar days.

Within __two__ calendar days after a Request for Advance is presented, Owner shall notify Contractor if Owner has any concerns about the Request for Advance that Owner believes should be resolved before Owner pays the amounts specified in the Request for Advance, and, in this event, Owner and Contractor shall promptly meet to address such concerns. Owner shall pay Contractor __100__ percent (__%) of the full amount covered by the Request for Advance within __3__ calendar days from the day it was presented while retaining __10__ percent (__%) thereof ("Holdback") to be paid simultaneously with the final payment. Payment may be withheld for: (1) failure to perform the Work in accordance with the Contract Documents; (2) defective Work that is not corrected; or (3) failure of the Contractor to pay subcontractors or to pay for labor, materials or equipment when due.

5.2    Final Payment. Final payment of the balance of the Contract Price including the Holdback shall be made in accordance with the following procedures:

a.    When Contractor considers the Work substantially complete, Contractor shall notify Owner in writing. Within a reasonable time thereafter, Owner and Contractor shall inspect the Work. Promptly after such inspection, Owner shall deliver to Contractor a written punch list of the items that must be completed in order for the Work to reach final completion ("Final Completion"). Alternatively, Owner shall deliver to Contractor a written statement that Final Completion has been reached because no punch list items remain to be completed.

b.    If Owner delivers a written punch list to Contractor, then Contractor shall deliver to Owner a written notice that the Work is finally complete when Contractor believes that the punch list items have been completed. Then Owner and Contractor shall promptly inspect the punch list items. Promptly after such inspection, Owner shall deliver to Contractor either (i) a written statement that Final Completion has been reached or (ii) another written punch list of the items that still must be completed in order for the Work to reach Final Completion in which event the punch list procedure described above shall be repeated until all punch list items have been completed.

c.  When Final Completion has been reached and after Contractor has delivered to Owner all maintenance and operating instructions, schedules, guarantees, certificates of inspection, marked-up record documents and other documents, Contractor may make application for final payment following the procedure for progress payments. The final Request for Advance shall be accompanied by all documentation called for in the Contract Documents, together with complete and legally effective releases or waivers (satisfactory to Owner and Lender) of all potential liens arising out of or filed in connection with the Work.

### Article 6. Interest.

Payments due and unpaid to Contractor shall bear interest at the rate of the lower of 35 percent (20%) per annum or the maximum rate allowed by law at the place of the Work.

### Article 7. Contractor's Representation.

In order to induce Owner to enter into this Contract, Contractor makes the following representation:

Contractor has familiarized itself with the nature and extent of the Contract Documents, Work site, locality, and all local conditions and laws and regulations that in any manner may affect cost, progress, performance or furnishing of the Work. Contractor is duly licensed to perform the Work as required by local laws and regulations.

### Article 8. Contract Documents.

The Contract Documents which comprise the entire Contract between Owner and Contractor concerning the Work consist of this Contract, Exhibit "A," the Plans and Specifications, all Change Orders and _____ N/A _____.

### Article 9. Contractor's Responsibilities.

9.1.  Performance. Contractor shall perform the Work in accordance with the Contract Documents. Contractor shall be solely responsible for the means, methods, techniques, sequences and procedures of construction.

9.2.  Personnel. Contractor shall provide competent, suitable personnel to survey and lay out the Work and perform construction as required by the Contract Documents. Contractor shall at all times maintain good discipline and order at the Property.

9.3.  Furnished Items. Contractor shall furnish and be fully responsible for all materials, equipment, labor, transportation, construction equipment and machinery, tools, appliances, fuel, power, light, heat, telephone, water sanitary facilities, temporary facilities and all other facilities and incidentals necessary for the furnishing, performance, testing, start-up and completion of the Work.

9.4.    Materials. All materials and equipment shall be of good quality and new, except as otherwise provided in the Contract Documents. All materials and equipment shall be applied, installed, connected, erected, used, cleaned and conditioned in accordance with the instructions of the applicable supplier.

9.5.    Subcontractors. Contractor shall be fully responsible to Owner for all acts and omissions of its subcontractors, suppliers and other persons and organizations performing or furnishing any of the Work under a direct or indirect contract with Contractor just as Contractor is responsible for Contractor's own acts and omissions. Nothing in the Contract Documents shall create any contractual relationship between Owner and any such subcontractor, supplier or other person or organization, nor shall it create any obligation on the part of Owner to pay any such subcontractor, supplier or other person or organization except as may otherwise be required by laws and regulations.

9.6.    Permits; Inspections. Contractor shall obtain and shall pay for all construction permits and licenses. Owner shall assist Contractor, when necessary, in obtaining such permits and licenses. Contractor shall pay all governmental charges and inspection fees necessary for the prosecution of the Work. Contractor shall give all notices and comply with all laws and regulations applicable to furnishing and performance of the Work.

9.7.    Taxes. Contractor shall pay all sales, consumer, use and other similar taxes required to be paid by Contractor in accordance with the laws and regulations of the place of the Work which are applicable during the performance of the Work.

9.8.    Use of Premises. Contractor shall confine construction equipment, the storage of materials and equipment and the operations of workers to the Property, and shall not unreasonably encumber the Property with materials or equipment. Contractor shall be fully responsible for any damage to the Property or areas contiguous thereto resulting from the performance of the Work. During the progress of the Work, Contractor shall keep the Property free from accumulations of waste materials, rubbish and other debris resulting from the Work. At the completion of the Work, Contractor shall remove all waste materials, rubbish and debris from and about the Property as well as all tools, appliances, construction equipment and machinery, and surplus materials, and shall leave the Property clean and ready for occupancy by Owner.

9.9.    Record Documents. Contractor shall maintain in a safe place at the Property one record copy of all drawings, specifications, addenda, written amendments, Change Orders, and the like in good order and annotated to show all changes made during construction which will be delivered to Owner.

9.10.   Safety. Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the Work. Contractor shall comply with all applicable laws and regulations relating to the safety of persons or property.

9.11.   Continuing the Work. Contractor shall carry on the Work and adhere to the progress schedule during all disputes or disagreements with Owner.

9.12.   Damage to the Work. Contractor shall repair or replace, at Contractor's sole expense, every portion of the Work that is damaged or destroyed prior to Final Completion and caused in whole or in part by the acts or omissions of Contractor. Notwithstanding the foregoing, Owner shall bear the cost of such repair or replacement if the sole cause of the damage or destruction of the Work was Owner's negligence.

9.13.   Warranty. Contractor warrants and guarantees to Owner that all Work will be in accordance with the Contract Documents and will not be defective. If within one year after the date of Final Completion or such longer period of time as may be prescribed by laws or regulations or by the terms of any specific provision or applicable special guarantee in the Contract Documents, any Work is found to be defective, Contractor shall promptly, without cost to Owner and in accordance with Owner's written instructions, promptly either correct such defective Work, or if it has been rejected by Owner, remove it from the Property and replace it with nondefective Work. If Contractor does not promptly comply with the terms of such instructions, or in an emergency where delay would cause serious risk of loss or damage, Owner may have the defective Work corrected or the rejected Work removed and replaced, and all direct, indirect and consequential costs of such removal and replacement (including but not limited to fees and charges of engineers, architects, attorneys and other professionals) will be paid by Contractor.

9.14.   Indemnity and Hold Harmless. Contractor shall indemnify and hold harmless Owner against all loss, liability, cost expense, damage and economic detriment of any kind whatsoever that arises out of or results from performance of the Work but only to the extent caused in whole or in part by the acts or omissions of the Contractor.

9.15   Related Work at Property. Owner may perform other work at the Property which is not part of the Work by Owner's own forces or let other direct contracts therefor. Contractor shall afford Owner's own forces and each other contractor who is a party to such a direct contract proper and safe access to the Property and a reasonable opportunity for the introduction and storage of materials and equipment and the execution of such work. Contractor shall do all cutting, fitting and patching of the Work that may be required to make its several parts come together properly and integrate with such other work. Contractor shall not endanger any work of others by cutting, excavating or otherwise altering their work and will only cut or alter their work with the written consent of Owner and the others whose work will be affected.

**Article 10. Insurance.**

10.1.   Contractor's Insurance. Contractor shall purchase and maintain such comprehensive general liability and other insurance as is appropriate for the Work being performed and furnished with limits and features as follows: $500K General Policy Policy # MP002985 . Before any Work is started, Contractor shall deliver to Owner certificates (and other evidence of insurance requested by Contractor) which Contractor is required to purchase and maintain.

10.2   Owner's Insurance. Owner shall be responsible for purchasing and maintaining Owner's liability insurance and other reasonably appropriate insurance.

**Article 11. Termination.**

11.1.   Termination by Owner. If the Contractor breaches any of its obligations under this Agreement, then Owner may give Contractor written notification identifying such breach. If Contractor has not cured such breach within seven (7) calendar days from its receipt of Owner's written notification or if such breach cannot be cured within such seven (7) day period, then if Contractor either does not begin cure within such seven (7) day period or fails to diligently prosecute cure to completion, Owner may terminate this Contract and take possession of the Work. Alternatively, instead of terminating the Contract, Owner may cure the breach and deduct the cost thereof from amounts otherwise owed to the Contractor.

11.2.   Termination by Contractor. If the Owner breaches any of its obligations under this Agreement, then Contractor may give Owner written notification identifying such breach. If Owner has not cured such breach within seven (7) calendar days from its receipt of Contractor's written notification, or if such breach cannot be cured within such seven (7) day period, then if Owner either does not begin cure within such seven (7) day period or fails to diligently prosecute cure to completion, Contractor may terminate this Contract.

**Article 12. Miscellaneous.**

12.1. Assignment of any rights or interests under this Contract shall not be binding on any party to this Contract without the written consent of such party. Payments due under this Contract may not be assigned. Notwithstanding the foregoing, the Owner hereby assigns all of its rights, title and interest in and to this Contract to the Owner's lender, Angel Oaks Loans, having an address at 170 South Ave Atlanta, GA 303.5, as additional security for the loan. The Contractor hereby consents to such assignment. Notwithstanding anything to the contrary in this Contract, upon a breach by the Owner of this Contract, the Contractor shall give the lender notice of such a breach, at the address set forth above, and provided that the Owner or the lender cures such default within a reasonable period and continues to pay the Contractor all amounts due under this Contract, the Contractor shall continue to perform its services under this Contract.

MULTISTATE CONSTRUCTION CONTRACT – Single Family – Fannie Mae HOMESTYLE MODEL DOCUMENT      Form 3734   11/01
(page 6 of 7 pages)

12.2.   Owner and Contractor each binds itself, its partners, successors, assigns and legal representatives, to the other party hereto, its partners, successors, assigns and legal representatives in respect to all covenants, agreements and obligations contained in the Contract Documents.

12.3.   This Contract and all issues, disputes and matters arising out of it shall be governed by and construed in accordance with the law of the state in which the Property is located, exclusive of that body of law governing conflicts of laws.

IN WITNESS WHEREOF, Owner and Contractor have signed this Contract.

This Contract will be effective on ___November   15___, 2016.

Owner: _Taariq Hacce_

Address for giving notices:

_419 Chamberlain St C6_

_Atlanta, GA 70312_

Contractor: _Julian Arnell_

License No. _07401286_

By: _____

Address for giving notices:

_1995 Evergreen Dr. SE._

_Conyers, GA 30013_

# HOMEOWNER/CONTRACTOR AGREEMENT

| Owner's Name(s): | Taariq Heaven | | | | |
|---|---|---|---|---|---|
| Address: | 170 SOUTH AVE SE | | | | |
| City: ATLANTA | | State: GA | | Zip Code: 30315 | |
| Telephone Number: 404-934-4887 | | Work: 404-715-4300 | | Cell/Mobile: 404 934-4887 | |
| Contractor's Name: | JULIAN ARNOLD | | License No.: | 07401286 | |
| Address: | 1995 EVERGREEN DR. S.E. | | | | |
| City: CONYER | | State: GA. | | Zip Code: 30013 | |
| Telephone Number: 678.570.0591 | | Work: | | Cell/Mobile: 678.570.0591 | |

THIS AGREEMENT made this date  10/31/16  between the above mentioned Homeowner (Owner) and  Contractor  is  for  the  rehabilitation  of  the  property located at 170 South Ave Atlanta GA 30315  that has been approved for a Fannie Mae HomeStyle rehabilitation mortgage.   The  Owner(s)  shall  pay  the  Contractor  the  sum  of $ 29963.89 for completion of the work including all sales tax due by law together with such increases or decreases in the contract price as may be approved in writing by the Lender. The work  will  begin within 30 days of loan closing with the Lender and will be completed by 2/27/17 unless delayed beyond the Contractor's control. The General Provisions listed below are made a part of this Agreement. The contract documents consist of the architectural exhibits listed in the Rehabilitation Loan Agreement between the Owner(s) and the Lender or as described below (or on an attached sheet):

_____  10/31/16          Julian Arnold.  10/31/16
Owner(s) Signature and Date                    Contractor's Signature and Date

1.  **Contract Documents:** This Agreement includes all general provisions, special provisions, and architectural exhibits that were accepted by the lender. Work not covered by this agreement will not be required unless it is required by reasonable inference as being necessary to produce the intended result. By executing this Agreement, the contractor represents that he/she has visited the site and understands local conditions, including state and local building regulations and conditions under which the work is to be performed.

2.  **Owner:** Unless otherwise provided for in the Agreement, the owner will secure and pay for necessary easements, exceptions from zoning requirements, or other actions which must precede the approval of a permit for this project. If owner fails to do so then the contract is void. If the contractor fails to correct defective work or persistently fails to carry out work in accordance with the agreement or general provisions, the owner may order the contractor in writing to stop such work, or a part of the work, until the cause for the order has been eliminated.

3.  **Contractor:** The contractor will supervise and direct the work and the work of all subcontractors. He/she will use the best skill and attention and will be solely responsible for all construction methods and

materials and for coordinating all portions of the work. Unless otherwise specified in the Agreement, the contractor will provide for and/or pay for all labor, materials, equipment, tools, machinery, transportation, and other goods, facilities, and services necessary for the proper execution and completion of the work. The contractor will maintain order and discipline among employees and will not assign anyone unfit for the task. The contractor warrants to the owner that all materials and equipment incorporated are new and that all work will be of good quality and free of defects or faults. The contractor will pay all sales, use and other taxes related to the work and will secure and pay for building permits and/or other permits, fees, inspections and licenses



necessary for the completion of the work unless otherwise specified in the Agreement. The contractor will indemnify and hold harmless the owner from and against all claim, damages, losses, expenses, legal fees or other costs arising or resulting from the contractor's performance of the work or provisions of this section. The contractor will comply with all rules, regulations, laws, ordinances and orders of any public authority or HUD inspector bearing on the performance of the work. The contractor is responsible for, and indemnifies the Owner against, acts and omissions of employees, subcontractors and their employees, or others performing the work under this Agreement with the contractor. The contractor will provide shop drawings, samples, product data or other information provided for in this Agreement, where necessary.

1.      **Subcontractor:** Selected by the contractor, except that the contractor will not employ any subcontractor to whom the owner may have a reasonable objection, nor will the contractor be required by the owner to employ any subcontractor to whom the contractor has a reasonable objection.

2.      **Work By Owner or Other Contractor:** The owner reserves the right to perform work related to the project, but which is not a part of this Agreement, and to award separate contracts in connection with other portions of the project not detailed in this Agreement. All contractors and subcontractors will be afforded reasonable opportunity for the storage of materials and equipment by the owner and by each other. Any costs arising by defective or ill-timed work will be borne by the responsible party.

3.      **Binding Arbitration:** Claims or disputes relating to the Agreement or General Provisions will be resolved by the Construction Industry Arbitration Rules of the American Arbitration Association (AAA) unless both parties mutually agree to other methods. The notice of the demand for arbitration must be filed in writing with the other party to this Agreement and with the AAA and must be made in a reasonable time after the dispute has arisen. The award rendered by the arbitrator(s) will be considered final and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

4.      **Cleanup and Trash Removal:** The contractor will keep the owner's residence free from waste or rubbish resulting from the work. All waste, rubbish, tools, construction materials, and machinery will be removed promptly after completion of the work by the contractor.

5.      **Time:** With respect to the scheduled completion of the work, time is of the essence. If the contractor is delayed at anytime in the progress of the work by change orders, fire, labor disputes, acts of God or other causes beyond the contractor's control, the completion schedule for the work or affected parts of the work may be extended by the same amount of time caused by the delay. The contractor must begin work no later than 30 days after loan closing and will not cease work for more than 30 consecutive days.

9.      **Payments and Completion:** Payments may

be withheld because of: (1) defective work not remedied;

(2) failure of contractor to make proper payments to subcontractors, workers, or suppliers; (3) persistent failure to carry out work in accordance with this Agreement or these general conditions, or (4) legal claims. Final payment will be due after complete release of any and all liens arising out of the contract or submission of receipts or other evidence of payment covering all subcontractors or suppliers who could file such a lien. The contractor agrees to indemnify the Owner against such liens and will refund all monies including costs and reasonable attorney's fees paid by the owner in discharging the liens. A 10 percent holdback is required by the lender to assure the work has been properly completed and there are no liens on the property.

10.      **Protection of Property and Persons:** The contractor is responsible for initiating, maintaining, and supervising all necessary or required safety programs. The contractor must comply with all applicable laws, regulations, ordinances, orders or laws of federal, state, county or local governments. The contractor will indemnify the owner for all property loss or damage to the owner caused by his/ her employees or his/her direct or subtler subcontractors.

11.      **insurance:** The contractor will purchase and maintain such insurance necessary to protect from claims under workers compensation and from any damage to the owner(s) property resulting from the conduct of this contract.

12.      **Changes in the Contract:** The owner may order changes, additions or modifications (using Fannie Mae form 1200) without invalidating the contract. Such changes must be in writing and signed by the owner and accepted by the lender. Not all change order requests may be accepted by the lender, therefore, the contractor proceeds at his/her own risk if work is completed without an accepted change order.

13.      **Correction of Deficiencies:** The contractor must correct promptly any work of his/her own or his/her subcontractors found to be defective or not complying with the terms of the contract.

14.      **Warranty:** The contractor will provide a one-year warranty on all labor and materials used in the rehabilitation of the property. This warranty must extend one year from the date of completion of the contract or longer if prescribed by law unless otherwise specified by other terms of this contract. Disputes will be resolved through the Construction Industry Arbitration Rules of the American Arbitration Association.

**Termination:** If the owner fails to make a payment under the terms of this Agreement, through no fault of the contractor, the contractor may, upon ten working days written notice to the owner, and if not satisfied, terminate this Agreement. The owner will be responsible for paying the contractor for all work completed. If the contractor fails or neglects to carry out the terms of the contract, the owner, after ten working days written notice to the contractor, may terminate this Agreement.



# EXHIBIT
## B

**Bank of America**                                           **Online Banking**

## BofA Core Checking – 5211: Account Activity Transaction Details

|  |  |
|---|---|
| **Check number:** | 00000000461 |
| **Post date:** | 01/03/2017 |
| **Amount:** | -5,000.00 |
| **Type:** | Check |
| **Description:** | Check Image |
| **Merchant name:** | Check Image |
| **Transaction category:** | Cash, Checks & Misc: Checks |

TAARIQ HEAVEN   (404) 934-4887
7272 THOREAU CIRCLE
ATLANTA, GA 30349

461

1/2/17   Date   84-5/612 GA 251

Pay to the
Order of   Julian Arnold   $ 5000.00

Five Thousand   0/100   Dollars

**Bank of America**

ACH R/T 061000052

For   170 South Ave Reno

⑈061000052⑈ 003348165211⑈0461

# Bank of America 🏁

## Online Banking

---

**BofA Core Checking - 5211: Account Activity Transaction Details**

---

|                          |                           |
| ------------------------ | ------------------------- |
| **Check number:**        | 00000000463               |
| **Post date:**           | 01/06/2017                |
| **Amount:**              | -8,000.00                 |
| **Type:**                | Check                     |
| **Description:**         | Check                     |
| **Merchant name:**       | Check                     |
| **Transaction category:**| Cash, Checks & Misc: Checks |



1/21/2018                    Bank of America | Online Banking | Accounts | Account Details | Account Activity

**Bank of America** 🇺🇸                                                    Online Banking

---

## BofA Core Checking - 5211: Account Activity Transaction Details

---

| | |
|---:|:---|
| **Check number:** | 00000000467 |
| **Post date:** | 03/20/2017 |
| **Amount:** | -6,000.00 |
| **Type:** | Check |
| **Description:** | Check Image |
| **Merchant name:** | Check Image |
| **Transaction category:** | Cash, Checks & Misc: Checks |

1/21/2018

 **Bank of America**

**Online Banking**

---

### BofA Core Checking - 5211: Account Activity Transaction Details

---

| | |
|---|---|
| **Check number:** | 00000000469 |
| **Post date:** | 05/08/2017 |
| **Amount:** | -2,500.00 |
| **Type:** | Check |
| **Description:** | Check Image |
| **Merchant name:** | Check Image |
| **Transaction category:** | Cash, Checks & Misc: Checks |

TAARIQ HEAVEN
7272 THOREAU CIRCLE   (404) 934-4887
ATLANTA, GA 30349

469

5/6/17  Date

Pay to the Order of _Julian Arnold_   $ 2500.00

_Two Thousand Five Hundred_ Dollars

Bank of America

ACH R/T 061000052

For _70-South Ave Road_

⑆061000052⑆ 003348165211⑈0469⑆

1/21/2018                    Bank of America | Online Banking | Accounts | Account Details | Account Activity

**Bank of America**                                                    **Online Banking**

---

## BofA Core Checking - 5211: Account Activity Transaction Details

|                          |                                   |
|--------------------------|-----------------------------------|
| **Check number:**        | 00000000475                       |
| **Post date:**           | 10/02/2017                        |
| **Amount:**              | -1,400.00                         |
| **Type:**                | Check                             |
| **Description:**         | Check Image                       |
| **Merchant name:**       | Check Image                       |
| **Transaction category:**| Cash, Checks & Misc: Checks       |

110858



JSA Construction, Inc & Taariq Heaven

| | | Payee Disbursement Voucher | | | |
|---|---|---|---|---|---|
| Loan # | Pol/Tax # | Loan Name | Date Paid | Amount | Check Number |
| 97924344 | lender - angel oak | Heaven | 04/03/17 | -9,357.97 | 110858 |

Payee Disbursement Total: -9,357.97

**Freedom Mortgage, Corp.**
RENOVATION LOAN ESCROW
CENTRAL DISBURSEMENT
907 PLEASANT VALLEY DR. SUITE 3
MT. LAUREL, NJ 08054

TD Banknorth, N.A.
Mt. Laurel, NJ 08054
55-1503/212

110858

CHECK NO.
110858

Nine Thousand Three Hundred Fifty Seven and 97/100 ———————— Dollars

DATE
April 3, 2017

AMOUNT
$9,357.97

PAY
TO THE
ORDER
OF      JSA CONSTRUCTION, INC & TAARIQ HEAVEN

⑈110858⑈ ⑆021201503⑆ 42410246 05⑈

Freedom Mortgage, Corp.



| Loan # FedTax # | Loan Name | Date Paid | Amount | Check Number |
|---|---|---|---|---|
| 87824344  lender - angel oak | Heaven | 05/03/17 | -9,357.97 | 112167 |

Payee DisbursementTotal: -9,357.97

**Freedom Mortgage, Corp.**
RENOVATION LOAN ESCROW
CENTRAL DISBURSEMENT
907 PLEASANT VALLEY DR. SUITE 3
MT. LAUREL, NJ 08054

TD Banknorth, N.A.
Mt. Laurel, NJ 08054
55-150/212

112167
CHECK NO.

112167

Nine Thousand Three Hundred Fifty Seven and 97/100————————————————Dollars

DATE    May 3, 2017

AMOUNT    $9,357.97

PAY
TO THE
ORDER
OF    JSA CONSTRUCTION, INC & TAARIQ HEAVEN

⑈112167⑈ ⑆021201503⑆ 4241024605⑈

Freedom Mortgage, Corp.

# EXHIBIT

## C

# GEORGIA
# CORPORATIONS DIVISION

GEORGIA SECRETARY OF STATE

## BRIAN P. KEMP

HOME (/)

## BUSINESS SEARCH

### BUSINESS INFORMATION

| | | | |
|---|---|---|---|
| Business Name: | **JSA CONSTRUCTION, INC.** | Control Number: | **07101286** |
| Business Type: | **Domestic Profit Corporation** | Business Status: | **Active/Owes Current Year AR** |
| Business Purpose: | **NONE** | | |
| Principal Office Address: | **1995 EVERGREEN DR. S.E., Conyers, GA, 30013, USA** | Date of Formation / Registration Date: | **11/28/2007** |
| State of Formation: | **Georgia** | Last Annual Registration Year: | **2017** |

### REGISTERED AGENT INFORMATION

Registered Agent Name: **JULIAN ARNOLD**

Physical Address: **1995 EVERGREEN DRIVE SE, CONYERS, GA, 30013, USA**

County: **Rockdale**

### OFFICER INFORMATION

| Name | Title | Business Address |
|---|---|---|
| JULIAN ARNOLD | CFO | 1995 EVERGREEN DRIVE, CONYERS, GA, 30013, USA |
| JULIAN ARNOLD | CEO | 1995 EVERGREEN DRIVE, CONYERS, GA, 30013, USA |
| STACEY E. ARNOLD | Secretary | 1995 EVERGREEN DRIVE, CONYERS, GA, 30013, USA |

Back

Filing History      Name History

Return to Business Search

Office of the Georgia Secretary of State Attn: 2 MLK, Jr. Dr. Suite 313, Floyd West Tower Atlanta, GA 30334-1530, Phone: (404) 656-2817 Toll-free: (844) 753-7825, WEBSITE: http://www.sos.ga.gov/

© 2015 PCC Technology Group. All Rights Reserved. Version 2.1.2      Report a Problem?

# EXHIBIT

## D

1/21/2018                                    Search Results



# PROFESSIONAL LICENSING
## GEORGIA SECRETARY OF STATE BRIAN P. KEMP

## Search Results

1. For a more detailed view of a licensee's background, click on the licensee name from the alphabetical list below. Results will open in a new window.

2. To return to the Search page, use either the **New Person Search** button or the **New Facility Search** button below. *Do not use your browser's back button.*

| Full Name | License Number | Profession | License Type | License Status | City | State | |
|---|---|---|---|---|---|---|---|
| **JSA Architecture Planning Engineering Interior Design** | PEF004725 | Engineers & Land Surveyors | Engineer Firm | Lapsed | Pittsburgh | PA | Submit Complaint |
| JSA Inc | RLCO000927 | Residential/General Contractor | Residential Light Company | Active | Duluth | GA | Submit Complaint |
| 1 | | | | | | | |

SearchResults

1/21/2018



# PROFESSIONAL LICENSING
## GEORGIA SECRETARY OF STATE BRIAN P. KEMP

## Search Results

1. For a more detailed view of a licensee's background, click on the licensee name from the alphabetical list below. Results will open in a new window.

2. To return to the Search page, use either the **New Person Search** button or the **New Facility Search** button below. ***Do not use your browser's back button.***

### Results

| Name | License # | Profession | License Type | Status | Address |
|------|-----------|------------|--------------|--------|---------|
| 1 | | | | | |